OPINION
{¶ 1} Plaintiffs-appellants, Frank and Karen Marra, appeal a decision of the Mahoning County Common Pleas Court granting a motion for summary judgment in favor of defendant-appellee, Nationwide Insurance Company. The court found that they were not entitled to underinsured motorists (UIM) coverage under a business auto policy issued by appellee.
 {¶ 2} Plaintiff-appellant, Frank Marra (Marra), owns one-third of a business called Casual Carpets, Inc. and is also the vice president of the company. On May 19, 1999, Marra left his house in the morning and went to the home of Joan Fisher. Marra took measurements of Fisher's floors in order to give her a price on carpeting for her home. Marra's young son was with him.
 {¶ 3} Marra left to attend a meeting with his brother and co-owner, Gene Marra, at Casual Carpet's Columbiana store. Before the meeting, Marra had to drop his son off at preschool. As Marra was driving to the preschool, Linda Diegidio negligently and proximately caused an automobile accident that injured Marra. As a result of the accident, Marra underwent various surgeries.
 {¶ 4} Marra's medical bills were $125,000. Marra's injuries are permanent and he will incur future medical expenses. Marra recovered $95,000 from Diegidio. Marra had a personal auto policy through Allstate, which paid him $5,000 in UIM coverage.
 {¶ 5} Marra filed a complaint for declaratory judgment against appellee on January 30, 2001, claiming he was entitled to UM/UIM coverage pursuant to the business auto policy appellee issued to Casual Carpets, Inc. Marra's wife, plaintiff-appellant, Karen Marra, set forth an attendant claim for loss of consortium.
 {¶ 6} On July 24, 2002, appellants filed a motion for partial summary judgment on the issue of coverage based on Scott-Pontzer v. LibertyMutual Fire Ins. Co. (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116. In response, appellee filed a combined motion for summary judgment and brief in opposition to appellants' motion for summary judgment on August 9, 2002. Appellee argued that appellants were not entitled to UM/UIM coverage under the policy because Marra was not operating a specifically described auto at the time of the accident. Appellee also argued that the "other owned vehicle" exclusion precluded coverage to appellants because Marra was operating a vehicle which he owned but that was not insured under the policy. On November 18, 2002, the trial court overruled appellee's motion and sustained appellant's motion finding coverage extended to appellants based on Scott-Pontzer.
 {¶ 7} On November 19, 2003, following the Ohio Supreme Court's decision in Westerfield Ins. Co. v. Galatis (2003), 100 Ohio St.3d 216,2003-Ohio-5849, 797 N.E.2d 1256, appellee filed a motion to dismiss, asserting that because Marra was not working within the scope of his employment, he had no cause of action. On January 20, 2004, appellants filed a response to appellee's motion to dismiss and a renewed motion for summary judgment on the issue of coverage. On December 7, 2004, the trial court overruled both appellee's motion to dismiss and appellant's motion for partial summary judgment.
 {¶ 8} On January 4, 2005, the trial court vacated its December 7, 2004 judgment entry. The trial court again denied both appellants' renewed motion for summary judgment and appellee's motion to dismiss. This time, the trial court explained that whether Marra was acting within the course and scope of employment was a question of fact.
 {¶ 9} Appellee appealed and appellants cross-appealed. This Court found that the trial court had not issued a final appealable order because there had not been a determination of damages. This Court dismissed the case and remanded the matter back to trial court.Marra v. Nationwide Ins. Co. (Apr. 22, 2005), 7th Dist. No. 05-MA-19.
 {¶ 10} On remand, the trial court ordered appellee to file a motion for summary judgment. Appellee filed a motion for summary judgment, asserting that appellant was not driving a vehicle covered by the insurance policy and therefore was not subject to UM/UIM coverage of the policy, regardless of whether he was working within the scope of his employment.
 {¶ 11} The trial court sustained appellee's motion for summary judgment, holding that the UIM in effect at the time of the accident did not extend to cover appellant. The trial court also found the UIM coverage in effect at the time complied with requirements of R.C.3937.18 (J) that was in effect at the time. This appeal followed.
 {¶ 12} Appellant's sole assignment of error states:
 {¶ 13} "The trial court erred in ruling that Nationwide Policy No. 92 BA 328-452-3001-0, which it issued to Marra's employer, excluded Marra's underinsured motorist claim."
 {¶ 14} A declaratory judgment action allows a court of record to declare the rights, status, and other legal relations of the parties. Civ.R. 57 and R.C. 2721.01 et seq. Such an action is an appropriate mechanism for establishing the obligations of an insurer in a controversy between it and its insured as to the fact or extent of liability under a policy. Lessak v. Metropolitan Cas. Ins. Co. ofN.Y. (1958), 168 Ohio St. 153, 155, 5 O.0.2d 442, 151 N.E.2d 730. When a declaratory judgment action is disposed of by summary judgment our review of the trial court's resolution of legal issues is de novo.King v. Western Reserve Group (1997), 125 Ohio App.3d 1, 5,707 N.E.2d 947. Hence, summary judgment is proper when: "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Welco Industries, Inc. v. Applied Cos. (1993),67 Ohio St.3d 344, 346, 617 N.E.2d 1129.
 {¶ 15} Under their sole assignment of error, appellants present three issues for review. Because appellants' second and third issues presented for review involve common and interrelated legal basis, they will be addressed together. Appellants' first issue presented for review will be addressed lastly and separately.
 {¶ 16} Appellant's second issue presented for review states:
 {¶ 17} "Plaintiff Marra is entitled to UIM coverage under the Nationwide Commercial Auto Policy (NCAP) because the policy fails to clearly and unambiguously require that he occupy a `covered auto' and therefore the purported exclusion must be construed against Nationwide."
 {¶ 18} Appellants' third issue presented for review states:
 {¶ 19} "The application of Nationwide's symbol 7' designation to the facts of this matter is contrary to law, against public policy and therefore unenforceable."
 {¶ 20} R.C. 3938.18 governs the provision of uninsured and underinsured motorist (UM/UIM) coverage. The statute has undergone numerous revisions in recent years. Prior to the most recent revision, R.C. 3937.18 required an insurer to offer UM/UIM coverage whenever an automobile liability or motor vehicle liability policy of insurance was issued. If UM/UIM coverage was not offered, it became part of the policy by operation of law. Davidson v. Motorists Mut. Ins. Co. (2001),91 Ohio St.3d 262, 264, 744 N.E.2d 713. Since there have been numerous changes in recent years to the statutes governing UM/UIM coverage and the case law interpreting those statutes, the applicable policy period and the applicable version of R.C. 3937.18 must first be determined.
 {¶ 21} "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins.Group of Cos. (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, syllabus. Here, the policy at issue, Nationwide's business auto policy, was effective from August 1, 1998 to August 1, 1999. Therefore, the version of R.C.3937.18 that controls this case was that enacted by Am. Sub. H.B. No. 261, 147 Ohio Laws, Part II, 2372 (H.B. 261), which became effective September 3, 1997.
 {¶ 22} That statute provided, in relevant part:
 {¶ 23} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state * * * unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds:
 {¶ 24} "* * *
 {¶ 25} "(2) Under insured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy * * *
 {¶ 26} "* * *
 {¶ 27} "(J) The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:
 {¶ 28} "(1) While the insured is operating or occupying a motor vehicle owned, by, furnished to, or available for the regular use of a named insured, * * * if the motor vehicle is not specifically identified in the policy under which a claim is made * * *."
 {¶ 29} Citing Westfield Ins. Co. v. Ellis, 11th Dist. No. 2003-T-0093,2004-Ohio-4393, appellants argue that the policy is ambiguous concerning whether an insured has to occupy a "covered auto." Appellee argues that the policy requires that the insured occupy a "covered auto" in order for UIM coverage to apply and that, in this case, plaintiff-appellant, Frank Marra, was not occupying a "covered auto."
 {¶ 30} "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. Hamilton Ins. Sen/., Inc. v. Nationwide Ins. Cos. (1999),86 Ohio St.3d 270, 273, 714 N.E.2d 898, citing Employers' Liab. Assur.Corp. v. Roehm (1919), 99 Ohio St. 343, 124 N.E. 223, syllabus. See, also, Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. Kelly v. Med. Life Ins.Co. (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241, 7 0.0.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. Id. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. Gulf Ins. Co. v. Burns Motors,Inc. (Tex. 2000), 22 S.W.3d 417, 423.
 {¶ 31} "On the other hand, where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent.Shifrin v. Forest City Enterprises, Inc. (1992), 64 Ohio St.3d 635,597 N.E.2d 499. A court, however, is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties. Id.; Blosserv. Enderlin (1925), 113 Ohio St. 121, 148 N.E. 393, paragraph one of the syllabus ('there can be no intendment or implication inconsistent with the express terms [of a written contract]').
 {¶ 32} "It is generally the role of the finder of fact to resolve ambiguity. See, e.g., Davis v. Loopco Industries, Inc. (1993),66 Ohio St.3d 64, 609 N.E.2d 144. However, where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party. Cent. Realty Co. v.Clutter (1980), 62 Ohio St.2d 411, 413, 16 0.0.3d 441, 406 N.E.2d 515. In the insurance context, the insurer customarily drafts the contract. Thus, an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured. King v. Nationwide Ins.Co. (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus." WestfieldIns. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849,797 N.E.2d 1256, at ¶ 11-13.
 {¶ 33} In this case, we need to examine three different provisions of the policy that could possibly apply to appellants' situation — the declarations page, the definition of who is an insured for purposes of UM/UIM coverage, and the "other owned vehicle" exclusion.
 {¶ 34} The declarations page of the policy contains a "SCHEDULE OF COVERAGES AND COVERED AUTOS." (Form Auto 8651-B [1-98], page 2 of 4.) This schedule lists the policy limits for various types of coverage, including uninsured-motorist coverage, and it states, "Each of these coverages will apply only to those `autos' shown as covered `autos.'" Thus, according to the declarations page, an insured must have been in a covered auto to be entitled to UM/UIM coverage.
 {¶ 35} Next, under a separate endorsement entitled "OHIO UNINSURED MOTORISTS COVERAGE — BODILY INJURY," the policy outlines the UM/UIM coverage. (Form CA 21 33 03 98.) This endorsement expressly modifies the "BUSINESS AUTO COVERAGE FORM," among others. The endorsement also changes who is an insured for purposes of UM/UIM coverage through the following section therein:
 {¶ 36} "B. Who Is An Insured
 {¶ 37} "1. You.
 {¶ 38} "2. If you are an individual, any `family member.'
 {¶ 39} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 40} "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'" (Form CA 21 33 03 98, p. 2 of 4.)
 {¶ 41} Lastly, also under the "OHIO UNINSURED MOTORISTS COVERAGE — BODILY INJURY" endorsement, is what is commonly referred to as an "other owned vehicle" exclusion, which states:
 {¶ 42} "C. Exclusions
 {¶ 43} "This insurance does not apply to:
 {¶ 44} "* * *
 {¶ 45} "5. `Bodily injury' sustained by:
 {¶ 46} "a. You while `occupying' or when struck by any vehicle owned by you
that is not a covered `auto' for Uninsured Motorists Coverage under this Coverage Form;
 {¶ 47} "b. Any `family member' while `occupying' or when struck by any vehicle owned by that `family member' that is not a covered `auto' for Uninsured Motorists Coverage under this Coverage Form; or
 {¶ 48} "c. Any `family member' while `occupying' or when struck by any vehicle owned by you that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy." (Form CA 21 33 03 98, p. 2 of 4.)
 {¶ 49} In Westfield Ins. Co. v. Ellis, 11th Dist. No. 2003-T-0093,2004-Ohio-4393, cited by appellants, the court interpreted policy language identical to the language present in this case. After noting that the declarations page referred to "covered autos," the court interpreted the definition of who is an insured, observing:
 {¶ 50} "The definition of `who is an insured' includes `you,' `if you are an individual, any family member,' and `anyone else occupying a covered auto.' The third enumerated paragraph specifically states if the insured is `anyone else,' he or she must be occupying a covered auto. However, the first two paragraphs, including `you' and `family members,'does not specifically state that the insured must be occupying a coveredauto. Thus, the policy is ambiguous as to whether the insured and family members must be occupying a covered auto." (Emphasis added.) Id. at ¶ 33.
 {¶ 51} The court then addressed Westfield's reliance on the "other owned vehicle" exclusion, as appellee does here. The court concluded:
 {¶ 52} "[A]s just indicated, the policy does not clearly require a party to be driving a covered auto. Were we to read the uninsured motorist portion of the policy to require the insured to be operating a covered auto, the exclusions set forth in the policy would be redundant: There would be no reason to exclude three specific situations addressing a non-covered auto because all situations involving non-covered autos are excluded. * * * Moreover, the `who is an insured' portion of the policy suggests that the insured and family members do not have to be occupying a covered auto. Consequently, Westfield's policy is ambiguous and reasonable (sic) susceptible to different interpretations. As we construe an insurance policy liberally in favor of the insured and strictly against the insurer, Westfield's position is without merit." (Internal citation omitted.) Id. at ¶ 34.
 {¶ 53} Interpreting policy language identical to that in WestfieldIns. Co. v. Ellis, 11th Dist. No. 2003-T-0093, 2004-Ohio-4393, and identical to the language in this case, the First District Court of Appeals has just recently also found that language ambiguous. Flynn v.Westfield Ins. Co., 1st Dist. No. C-050909, 2006-Ohio-3719, ¶ 21-35.
 {¶ 54} We agree with the reasoning employed by the Eleventh and First Districts. Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, 797 N.E.2d 1256, which expressly limitedScott-Pontzer v. Liberty Mutual Fire Insurance Co. (1999),85 Ohio St.3d 660, 710 N.E.2d 1116, provides additional support for our conclusion that the policy language is ambiguous. The Court in Galatis noted that the "purpose of a commercial auto policy is to protect the policyholder." Id. at ¶ 37, King v. Nationwide, (1988)35 Ohio St.3d 208, 519 N.E.2d 1380. Therefore, when determining in the first instance "whether a claimant is insured under a policy, ambiguities are construed in favor of the policyholder, not the claimant." Id. at ¶ 35.
 {¶ 55} For example, "King held that the use of a vehicle `by and for' the corporate policyholder precipitated coverage. This holding is reasonable because it arguably benefits the policyholder to insure against losses sustained by those operating vehicles on its behalf." Id. at ¶ 37.
 {¶ 56} In this case, one of the policyholders listed as a named insured is Casual Carpets, Inc. Presuming that Marra was operating his vehicle in the course and scope of his employment, his use of a vehicle "by and for" Casual Carpets, Inc. should be covered because it arguably benefits Casual Carpets, Inc. to insure against losses by those operating vehicles on its behalf. The benefit becomes even more apparent when consideration is given to the fact that Marra is vice president and one-third owner of Casual Carpets, Inc.
 {¶ 57} Therefore, we conclude that appellee's business auto policy herein is ambiguous and reasonably susceptible to different interpretations, and construe it in appellants' favor.
 {¶ 58} Turning lastly to appellants' first issue presented for review, it states:
 {¶ 59} "The trial court erred by not granting summary judgment to Marra on the issue of whether he was working within the course and scope of his employment for Casual Carpet at the time of the collision on May 19, 1999 since Nationwide failed to set forth any evidence on that issue."
 {¶ 60} In Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, 797 N.E.2d 1256, the Supreme Court of Ohio held that coverage under Scott-Pontzer policies does not extend to losses that do not arise within the course and scope of employment.
 {¶ 61} Appellants' and appellee discuss at length in their appellate briefs the issue of whether plaintiff-appellant, Frank Marra, was working within the course and scope of his employment. However, the trial court never reached this issue when it awarded judgment in favor of appellee. This is because the trial court found that the UIM in effect at the time of the accident did not extend to cover appellant and also that it complied with the requirements of R.C. 3937.18(J) that was in effect at the time. At oral arguments on this matter, counsel for both parties acknowledged that the trial court did not reach the issue.
 {¶ 62} This Court has subscribed to the general rule in Ohio that appellate courts do not consider issues that the trial court did not address. Padula v. Hall, 7th Dist. No. 03-MA-235, 2004-Ohio-4823, at ¶ 24, citing Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84, 89,585 N.E.2d 384. When a trial court does not consider one of the arguments raised in support of a motion, but grants the motion solely on the basis of a second argument, the first argument is not properly before the court of appeals. Id. In this case, the trial court decided the motion for summary judgment solely on the issue of coverage, so the course and scope of his employment was not decided and is not properly before this court.
 {¶ 63} In conclusion, although we find that appellee's business auto policy herein is ambiguous and reasonably susceptible to different interpretations, we construe the policy in his favor for coverage only to the extent that he can establish that he was working within the course and scope of his employment as required by Galatis. Since the merits of that issue were never reached by the trial court, it will have to be dealt with on remand.
 {¶ 64} Accordingly, appellants' sole assignment of error is with merit only to the extent mentioned above. We do not address the merits of appellants' arguments concerning the issue of whether Marra was working in the course and scope of his employment since the trial court has yet to address that particular aspect of the case.
 {¶ 65} The judgment of the trial court is hereby reversed and this matter remanded for further proceedings according to law and consistent with this Court's opinion.
Vukovich, J., concurs.
Waite, J., dissents. See dissenting opinion.