[Cite as *Infield v. Westfield Ins. Co.*, 2023-Ohio-1199.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| LARRY G. INFIELD, ET AL. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiffs-Appellants | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. CT2022-0055 |
| | : | |
| WESTFIELD INSURANCE COMPANY | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Muskingum County
Court of Common Pleas, Case No.
CC2021-0030

JUDGMENT:                       AFFIRMED

DATE OF JUDGMENT ENTRY:     April 10, 2023

APPEARANCES:

For Plaintiffs-Appellants:                  For Defendant-Appellee:

MILES D. FRIES                            CARI FUSCO EVANS
320 Main St.                                 3520 Whipple Ave., NW
P.O. Box 190                                Canton, OH 44718
Zanesville, OH 43702-0190

*Delaney, J.*

{¶1} Plaintiffs-Appellants Larry G. Infield, Lois Jean Infield, and Larry G. Infield, as Executor of the Estate of Bessie E. Infield, appeal the July 19, 2022 judgment entry of the Muskingum County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### The Accident

{¶2} On December 9, 2019, Plaintiff-Appellant Larry G. Infield was driving a 2017 Cadillac titled in the name of his wife, Plaintiff-Appellant Lois Jean Infield. Lois Jean Infield and Bessie Infield were passengers in the car. A motorist driving a 2002 Mazda went left-of-center, causing a collision with the Cadillac. Larry Infield and Lois Jean Infield suffered severe bodily injuries because of the accident. Bessie Infield was killed in the accident.

### Settlement with the Tortfeasor

{¶3} The Tortfeasor had state minimum insurance coverage in the amount of $25,000 per person and $50,000 per occurrence. The Infields accepted the Tortfeasor's insurance limits in the amount of $50,000.

### The Infields' Personal Automobile Liability Policy

{¶4} On December 9, 2019, Larry Infield and Lois Jean Infield were the named insureds under a personal automobile liability policy issued by Defendant-Appellee Westfield Insurance Company, effective from November 12, 2019 to November 21, 2020. The personal automobile liability coverage listed the Cadillac owned by Lois Jean Infield as a covered auto. The personal automobile liability policy provided uninsured/underinsured coverage (hereinafter "UM/UIM coverage") in the amount of $300,000 for each accident.

**The Infields' Commercial Automobile Liability Policy**

{¶5}   Effective March 19, 2019 to March 19, 2020, Infield Farms, LLC, and Larry G. Infield were the named insureds under a Commercial Liability Policy No. CAG 4 181 108 issued by Westfield Insurance Company. The Commercial Liability Policy provided commercial general liability coverage, commercial auto coverage, commercial umbrella coverage, and terrorism insurance coverage.

**Availability of Coverage**

{¶6}  Westfield and the Infields do not dispute that the tortfeasor was an underinsured motorist. Westfield consented to the Infields' acceptance of the tortfeasor's insurance limits of $50,000.

{¶7}   Westfield offered and paid Larry Infield and Lois Infield the $300,000 limit of the UM/UIM coverage under the Personal Automobile Liability Policy. Westfield's payment under the Personal Automobile Liability Policy was in exchange for a release of claims for coverage under that policy.

{¶8} Westfield and the Infields disputed whether the Infields were entitled to UM/UIM coverage under the Commercial Automobile Liability Policy pursuant to the language of the policy. On February 8, 2021, the Infields filed a complaint for declaratory judgment against Westfield in the Muskingum County Court of Common Pleas. The complaint raised four causes of action: declaratory judgment that the Infields were entitled to UM/UIM coverage under the Commercial Automobile Liability Policy; breach of contract, bad faith, and punitive damages. Westfield filed its answer on March 1, 2021.

{¶9} On December 15, 2021, the parties filed a Stipulation of Facts to the accident, the availability of UM/UIM coverage under the Personal Automobile Liability

Policy, and the existence of UM/UIM coverage under the Commercial Automobile Liability Policy issued to Larry Infield and Infield Farms, LLC. Attached to the Stipulation was the Commercial Liability Policy issued by Westfield to Infield Farms, LLC, and Larry Infield.

### Motions for Summary Judgment

{¶10} Westfield filed its motion for summary judgment on January 10, 2022, arguing there was no genuine issue of material fact that the Infields were not entitled to UM/UIM coverage under the Commercial Automobile Liability Policy as a matter of law. On the date of the accident, Larry Infield was driving a Cadillac, where Lois Jean and Bessie Infield were passengers. Pursuant to the plain language of the Commercial Automobile Liability policy, the Cadillac was not a covered auto and therefore, the Infields were not eligible for UM/UIM coverage.

{¶11} On March 14, 2022, the Infields filed a response to the motion for summary judgment and a cross-motion for summary judgment. In their motion, they argued that pursuant to the conflicting language of the Business Auto Coverage Declarations Page and the UM/UIM Endorsement within the Commercial Automobile Liability Policy, the policy should be interpreted against Westfield to permit UM/UIM coverage for Larry Infield and Bessie Infield as insureds.

{¶12} Westfield filed a combined reply and response on March 29, 2022. In addition to supporting its interpretation of the UM/UIM coverage under the Commercial Automobile Liability Policy, Westfield contended that pursuant to the "anti-stacking" provisions of the policy, the Infields would only be eligible for $200,000 in coverage. As the Infields already received $300,000 in UM/UIM coverage pursuant to the Personal

Automobile Liability policy and the highest policy limit is $500,000, the language of the policies limited the Infields' recovery to $200,000.

{¶13} Westfield filed a motion for leave to file a supplemental argument in support of its motion for summary judgment, which the trial court granted on April 1, 2022. In the supplemental motion, Westfield argued there was no genuine issue of material fact that it did not engage in bad faith when it interpreted the terms of the Commercial Automobile Liability Policy to deny UM/UIM coverage.

### Judgment

{¶14} On July 8, 2022, the trial court issued a summary judgment entry granting Westfield's motion for summary judgment and denying the Infields' cross-motion for summary judgment. The trial court filed a more detailed judgment entry, with the same ruling, on July 19, 2022.

{¶15} It is from these judgments that the Infields now appeal.

### ASSIGNMENT OF ERROR

{¶16} The Infields raise one Assignment of Error:

{¶17} "I. THE TRIAL COURT ERRED IN FAILING TO CONSTRUE THE TWO CONFLICTING PROVISIONS OF THE POLICY AGAINST APPELLEE, THE INSURER."

### ANALYSIS

### Standard of Review

{¶18} The Infields' sole Assignment of Error contends the trial court erred when it granted summary judgment in favor of Westfield to find that they were not entitled to UM/UIM coverage under the Commercial Automobile Liability Policy.

{¶19} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶20} Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

{¶21} It is well established that the party seeking summary judgment bears the burden of demonstrating no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt*, 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type

listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 309 N.E.2d 924 (1974).

### Interpretation of Automobile Insurance Contracts

{¶22} The Ohio Supreme Court has stated how automobile insurance contracts are to be interpreted:

> When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999), citing *Employers' Liab. Assur. Corp. v. Roehm*, 99 Ohio St. 343, 124 N.E. 223 (1919), syllabus. *See, also*, Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line*

*Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Id.* As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423, 43 Tex. Sup. Ct. J. 647 (Tex. 2000).

On the other hand, where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499 (1992). A court, however, is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties. *Id.*; *Blosser v. Enderlin*, 113 Ohio St. 121, 148 N.E. 393 (1925), paragraph one of the syllabus ("there can be no intendment or implication inconsistent with the express terms [of a written contract]").

It is generally the role of the finder of fact to resolve ambiguity. *See, e.g., Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 609 N.E.2d 144 (1993). However, where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party. *Cent. Realty Co. v. Clutter*, 62 Ohio St.2d 411, 413, 406 N.E.2d 515 (1980). In the insurance context, the insurer customarily drafts the contract. Thus, an ambiguity in an insurance contract is ordinarily interpreted against the

insurer and in favor of the insured. *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus.

*Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11-13. *See also, Nationwide Mut. Fire. Ins. Co. v. Pusser*, 160 Ohio St.3d 203, 2020-Ohio-2778, 155 N.E.3d 839, ¶ 8.

### Terms of the Commercial Automobile Liability Policy

{¶23} In this case, we examine different provisions of Commercial Automobile Liability Policy to determine if the Infields are entitled to UM/UIM coverage.[1]

<u>The Business Auto Coverage Declarations Page</u>

{¶24} The Business Auto Coverage Declarations Page of the business auto coverage states in pertinent part as to UM/UIM coverage:

**ITEM ONE – NAME INSURED & MAILING ADDRESS**

INFIELD FARMS, LLC
AND LARRY G. INFIELD

**ITEM TWO      SCHEDULE OF COVERAGES AND COVERED AUTOS**

Each of These Coverages Will Apply Only To Those "Autos" Shown as Covered "Autos". "Autos" Are Shown As Covered "Autos" For A Particular Coverage By The Entry of One or More Of The Symbols From The Covered Auto Section Of The Business Auto Coverage Form Next To The Name Of The Coverage.

---

[1] The language of the Commercial Automobile Liability Policy uses the term, "Business Auto Coverage" to refer to the automobile liability coverage provided under the Commercial Automobile Liability Policy No. CAG 4 181 108, at issue in this appeal. In this Opinion, we use the terms, "Commercial Automobile Liability Policy" and "Business Auto Coverage" interchangeably to refer to the policy at issue.

| COVERAGES | COVERED AUTO SYMBOLS | LIMIT<br>THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| Liability | 07,08,09 | Bodily Injury and Property Damage $500,000 Each Accident | $374 |
| * * * | * * * | * * * | * * * |
| OH Uninsured Motorists | 07 | $500,000 Each Accident<br>This endorsement provides Uninsured Motorists Coverage only and all references to "underinsured motor vehicles" do not apply. | $52 |
| OH Underinsured Motorists | 07 | $500,000 Each Accident<br>This endorsement provides Underinsured Motorists Coverage only and all references to "uninsured motor vehicles" do not apply. | $110 |

**ITEM THREE     SCHEDULE OF COVERED AUTOS YOU OWN**

**The Insurance Afforded For Any One Automobile Is Only With Respect To Such And So Many Of The Coverages As Are Indicated In Item Two Unless A Specific Limit Or Deductible Is Indicated In This Schedule Of Automobiles.**

| AUTO | ST | TER | YR | DESCRIPTION |
|---|---|---|---|---|
| 001 | OH | 152 | 87 | CHEVY/DUMP |
| 002 | OH | 152 | 05 | GOOSENECK TRAILER |
| 003 | OH | 152 | 97 | FORD PU |
| 004 | OH | 152 | 01 | MORITZ TAGALONG |

<u>The Business Auto Coverage Form</u>

{¶25} The Business Auto Coverage Form CA 00 01 10 13 states:

**SECTION 1 – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos." The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**

| Symbol | Description of Covered Auto Designation Symbols | |
|--------|--------------------------------------------------|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| * * * | * * * | |
| 6 | Owned "Autos" Subject to a Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. * * * |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (And for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| * * * | * * * | |

* * *

**SECTION V – DEFINITIONS**

* * *

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

<u>Ohio UM/UIM Coverage – Bodily Injury Endorsement (CA 21 33 08 17)</u>

{¶26} The business auto policy's Ohio Uninsured and Underinsured Motorists Coverage – Bodily Injury Endorsement (CA 21 33 08 17) states as follows:

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Ohio, this endorsement modifies insurance provided under the following:

* * *

BUSINESS AUTO COVERAGE FORM

* * *

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages, from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury" sustained by the "insured" and caused by an "accident."

* * *

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

> a. The Named Insured and any "family members".
>
> b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". * * *
>
> c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation, or any other form of organization, then the following are "insureds":

> a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". * * * However, no coverage is provided for anyone occupying an "auto" which is not a covered auto for Uninsured Motorists and/or Underinsured Motorists Coverage under this Coverage Form.
>
> b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

**C. Exclusions**

This insurance does not apply to:

* * *

5. "Bodily Injury" sustained by:

> a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto"

for Uninsured Motorists Coverage and/or Underinsured Motor [sic] Coverage under this Coverage Form;

b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage under this Coverage Form; or

c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

### Is There UM/UIM Coverage under the Commercial Auto Policy?

{¶27} The Infields contend they are entitled to UM/UIM coverage under the Commercial Automobile Liability Policy due to the ambiguous language of the policy. They specifically argue that conflicts between the Business Auto Coverage Declarations Page and the UM/UIM Endorsement create internal ambiguity as to who is an insured, thereby entitling them to UM/UIM coverage when the terms of the policy are construed against Westfield and liberally in favor of the Infields.

{¶28} Before we analyze whether the policy language is ambiguous, we first address where the policy is unambiguous that there is no UM/UIM coverage. The accident took place while Larry Infield was driving a Cadillac, which was titled in the name of Lois Jean Infield. Lois Jean Infield is the wife of Larry Infield. She was a passenger in the Cadillac at the time of the accident and sustained bodily injuries. The business auto coverage UM/UIM endorsement contains an "other owned auto" exclusion, which states:

This insurance does not apply to:

* * *

5. "Bodily Injury" sustained by:

* * *

b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage under this Coverage Form;

{¶29} Based on the plain language of the "other owned auto" exclusion, Lois Jean Infield is not entitled to UM/UIM coverage under the Commercial Automobile Liability Policy because when she sustained a bodily injury, she was a family member occupying a vehicle that she owned and not a covered auto under the business auto coverage.

{¶30} The Infields argue that Larry Infield and Bessie Infield remain entitled to UM/UIM coverage under the Commercial Automobile Liability Policy based on conflicts between the Business Auto Coverage Declarations Page and the UM/UIM Endorsement. They contend the policy is ambiguous because the Business Auto Coverage Declarations Page identifies four vehicles covered under the business auto coverage but the UM/UIM Endorsement does not require an insured to be occupying a covered auto to recover UM/UIM benefits under the policy. Westfield contends the business auto coverage is unambiguous and the Infields are not entitled to UM/UIM coverage as a matter of law. It is Westfield's position that UM/UIM coverage is available only when the insureds are operating or occupying a covered auto as defined by the Business Auto Coverage Declarations Page and Business Auto Coverage Form.

{¶31} "Item Two – Schedule of Coverages and Covered Autos" of the Business Auto Coverage Declarations Page lists the types of coverages, policy limits, premiums, and the symbol designating the automobile entitled to the applicable coverage. Item Two contains a statement that the listed coverages apply only to the autos shown as covered autos. As to UM/UIM coverage, Item Two designates Symbol 07 as covered autos. The Business Auto Coverage Declarations Page states that covered autos are defined by the entry of a symbol found in Section I of the Business Auto Coverage Form. Symbol 07 is defined as "specifically described autos" which are "only those autos described in Item Three of the Declarations for which a premium charge is shown." Item Three lists the schedule of covered autos. Reasonable minds can only conclude that based on the Business Auto Coverage Declarations Page and the Business Auto Coverage Form, there is no factual dispute that the Cadillac involved in the accident is not a covered auto.

{¶32} The Infields argue that while the Cadillac is not listed as a covered auto in the Business Auto Coverage Declarations Page, Larry Infield and Bessie Infield remain insureds entitled to UM/UIM coverage based on the definition of "Who Is An Insured" found in the UM/UIM Endorsement. The UM/UIM Endorsement defines an insured based on whether the policy was taken in the name of an individual or a limited liability company. In this case, the policy was taken in the name of an individual, Larry G. Infield, and a limited liability corporation, Infield Farms, LLC. In their argument that they are entitled to coverage, the Infields address only the individual definition of "Who Is An Insured," not the limited liability corporation definition. The individual definition states:

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

a. The Named Insured and any "family members".

{¶33} The UM/UIM Endorsement definition of "Who Is An Insured" does not expressly state that the insured must be in a covered auto. The Infields contend the conflict between the Business Auto Coverage Declarations Page and the UM/UIM Endorsement creates an internal ambiguity as to whether the named insured and any family member, Larry Infield and Bessie Infield, must be occupying a covered auto at the time of the accident to be entitled to UM/UIM coverage. The Infields cite this Court to *Batteiger v. Allstate Ins. Co.*, 2nd Dist. Miami No. 2001 CA 37, 2002-Ohio-909, *Westfield Ins. Co. v. Ellis*, 11th Dist. Trumbull No. 2003-T-0093, 2004-Ohio-4393, and *Marra v. Nationwide Ins. Co.*, 7th Dist. Mahoning No. 05-MA-216, 2007-Ohio-356, in support of their argument as to the ambiguity of the language between the Declarations Page and the UM/UIM Endorsement. The Infields suggest that we follow this case law, which examined almost identical contract language to the Westfield Commercial Automobile Liability Policy in the present case. The cited cases found the insurance policies were ambiguous as to whether there was UM/UIM coverage, thereby reversing the trial courts' judgments that the plaintiffs were not entitled to UM/UIM coverage under the business policies issued by the insurance companies. The cited case law was issued during the *Scott-Pontzer v. Liberty Mutual Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999) era and aftermath, which the Ohio Supreme Court ended with its decision in *Westerfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. Based on the *Scott-Pontzer/Galatis* history, we find we can only give the Infields' cited case law persuasive value, not precedential.

{¶34} We acknowledge the definition of "Who Is An Insured" found within the UM/UIM Endorsement does not plainly state the named insured or family member must be occupying a covered auto. Westfield directs this Court to consider the introductory language of the UM/UIM Endorsement. The UM/UIM Endorsement states at the beginning of the form:

> For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Ohio, this endorsement modifies insurance provided under the following:
>
> * * *
>
> BUSINESS AUTO COVERAGE FORM
>
> * * *
>
> With respect to coverage provided by this endorsement, the provisions of
>
> the Coverage Form apply unless modified by this endorsement.

The plain language of the UM/UIM Endorsement states that it modifies insurance provided under the Business Auto Coverage Form for *covered autos*. As discussed above, there is no genuine issue of material fact that the Cadillac is not a covered auto under the Commercial Automobile Liability Policy.

{¶35} The Ohio Supreme Court has stated:

> Insurance policies cannot be read in an overly circumscribed fashion. *Gomolka [v. State Auto. Mut. Ins. Co.]*, 70 Ohio St.2d [166] at 172, 436 N.E.2d 1347. "One may not regard only the right hand which giveth, if the left hand also taketh away. The intention of the parties must be derived instead from the instrument as a whole, and not from detached or isolated

parts thereof." *Id.*, citing *Stickel v. Excess Ins. Co. of Am.*, 136 Ohio St. 49, 53, 23 N.E.2d 839 (1939), and *Germania Fire Ins. Co. v. Schild*, 69 Ohio St. 136, 68 N.E. 706 (1903).

*Raudins v. Hobbs*, 8th Dist. No. 106232, 2018-Ohio-2309, 104 N.E.3d 1040, 2018 WL 3005351, ¶ 46 quoting *Sauer v. Crews*, 140 Ohio St.3d 314, 2014-Ohio-3655, 18 N.E.3d 410, ¶ 13. If we were to consider the Infields' argument as to the definition of "Who Is An Insured," we could not give meaning to every provision of the UM/UIM Endorsement; thereby rendering meaningless the introductory limitation that the UM/UIM Endorsement only applies to covered autos, which are defined in the Business Auto Coverage Declarations Page and Business Auto Coverage Form. Reading the policy as a whole and in favor of the insured, we find no ambiguity as to "Who Is An Insured" within the UM/UIM Endorsement that it modifies the Business Auto Coverage as to covered autos.

{¶36} There is no genuine issue of material fact that to be entitled to UM/UIM coverage under the Westfield Commercial Automobile Liability Policy, the named insured must be occupying a covered auto. At the time of the accident, Larry Infield and Bessie Infield were not occupying a covered auto under the terms of the Commercial Automobile Liability Policy. Thus, there is no genuine issue of material fact that the Infields were not covered under the Commercial Automobile Liability Policy for UM/UIM benefits.

{¶37} The Infields' sole Assignment of Error is overruled.[2]

---

[2] The trial court's July 19, 2022 judgment entry granted summary judgment in favor of Westfield on all the Infield's causes of action, including bad faith. On appeal, the Infields only argued that the trial court erred when it found they were not entitled to UM/UIM coverage under the Commercial Automobile Liability Policy. They did not raise their claim for bad faith as an Assignment of Error. Although Westfield argued in its brief that the trial court did not err as to bad faith, we do not address this issue in our Opinion because the Infields did not raise it as an Assignment of Error and have therefore waived the issue.

## CONCLUSION

{¶38} The judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

King, J., concur.