[Cite as *Crum-Cianflone v. Cianflone*, 2026-Ohio-663.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NANCY F. CRUM-CIANFLONE | Case No. 2025 CA 0037 |
| Plaintiff - Appellee | Opinion and Judgment Entry |
| -vs- | Appeal from the Richland County Court of Common Pleas, Domestic Relations Division, Case No. 2022 RFO 0577 |
| MICHAEL A. CIANFLONE | |
| Defendant - Appellant | Judgment: Vacated; and Remanded |
| | Date of Judgment Entry: February 26, 2026 |

**BEFORE:** Andrew J. King, William B. Hoffman, Kevin W. Popham, Appellate Judges

**APPEARANCES:** Eric M. Brown, Barry Wolinetz, Wolinetz, Horvath & Brown, LLC, for Plaintiff-Appellee; Paul R. Kerridge, Alex J. Durst, Durst Kerridge, LLC, for Defendant-Appellant

OPINION

*Hoffman, J.*

{¶1} Defendant-appellant Michael A. Cianflone appeals the April 30, 2025 Judgment Entry entered by the Richland County Court of Common Pleas, Domestic Relations Division, which found plaintiff-appellee Nancy F. Crum-Cianflone was not in contempt after determining Appellee did not violate the spousal support provision of the parties' Marital Settlement Agreement as the disputed compensation did not fall within the category of "bonus." We vacate the decision of the trial court and remand the matter.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant and Appellee were married on June 11, 2005. Two children were born as issue of the union. The family resided in San Diego, California. Appellee is an infectious disease physician. Appellant has a Master's Degree in computer science and was employed until 2010, when he left the workforce and became a stay-at-home parent following the birth of the parties' second child.

{¶3} Appellant and Appellee separated on March 12, 2020. Appellee subsequently filed for divorce in the Superior Court of San Diego County, California ("the California Court"). On July 16, 2021, before the divorce was finalized, Appellee accepted a position with Avita Health Care Systems ("Avita Health") in Ohio, and she and the children relocated to Ohio in August, 2021. Appellant moved to Ohio sometime thereafter.

{¶4} On January 7, 2022, Appellant executed a marital settlement agreement ("the Settlement Agreement"), which provided for, inter alia, custody and visitation, the payment of marital debts and obligations, and spousal and child support. Appellee executed the Settlement Agreement on January 28, 2022. On February 8, 2022, the

California Court entered a Judgment of Dissolution of Marriage which incorporated the Settlement Agreement.

{¶5} With respect to spousal support, the Settlement Agreement provides, in relevant part:

a. Wife shall pay Husband spousal support of $4,500 per month commencing August 1, 2021. Further, as additional spousal support Wife shall pay Husband 18.5% of any bonus she receives from her employment within 14 days of receipt of the bonus, including any bonus she may receive from her employment in San Diego County. She shall provide Husband with a copy of her bonus pay stub along with the payment.

Marital Settlement Agreement, Section IV. Spousal Support, p. 16.

{¶6} On August 30, 2022, Appellant filed a petition to register foreign parenting orders in the Richland County Court of Common Pleas, Domestic Relations Division. The trial court granted the petition on December 30, 2022. Thereafter, the parties filed a barrage of motions, the majority of which dealt with issues regarding the parties' parental rights and responsibilities. A reiteration of those filings is not relevant to this appeal.

{¶7} Appellant filed a motion for contempt on August 3, 2023, and an amended motion for contempt on September 5, 2023. Appellant filed a second motion for contempt on October 1, 2024. Therein, Appellant moved the trial court for an order requiring Appellee to appear and show cause why she should not be held in contempt for, relevant

to this appeal, violating the spousal support provision of the Settlement Agreement which obligated her to pay Appellant 18.5% of her bonuses.

{¶8} The trial court conducted a hearing over the course of five days in October, 2024, to address a number of pending motions, including Appellant's motions for contempt. The following evidence was presented regarding the issue of Appellee's bonuses.

{¶9} Appellee testified she is "compensated by the work that [she] provide[s] to patients through Avita Health Care System based upon an RVU, which is a relative value unit." Trial Transcript, Vol. V, p. 1234. Appellee explained each time she sees a patient, an assigned amount of RVU is generated from the consult or clinic visit she performs. Appellee added she is paid her due amount for every RVU she performs. Appellee stated she is not paid a regular based salary in addition to her RVUs.

{¶10} Appellee read the compensation provision of her employment contract: "No. 1, Compensation, physician will be paid the greater of the following; A, physician shall receive $291,000 per year as base compensation for -- for the three years of this agreement, which shall be paid out under the same payroll schedule as all other hospital employees." *Id*. at p. 1236. Appellee continued: "B, the total number of work relative value units, RVUs, multiplied by 58.35, the work RVU ratio, estimated bonus payments based on the above work RVU calculation may be paid out quarterly with a final settlement at the end of each contract year. The work RVU ration will be updated annually to the then current MGMA median for physician specialty of infectious disease." *Id*.

**{¶11}** Appellee testified she is paid solely under Subsection B of the employment contract. Appellee stated she receives a paycheck every two weeks and quarterly, clarifying:

So every amount of money that I receive from Avita totally comes from my RVUs in terms of my patient encounters under this calculation. I am receiving only money from then through the RVU system. * * * any pay that I get every two weeks is taken out of my RVUs, so I'm only getting paid through the RVU program. * * * they're issuing me a general paycheck every two weeks so that I have money that I can spend and live on.

*Id.* at p. 1242.

**{¶12}** Appellee stated she did not receive bonuses in 2022, 2023, or 2024. Tr., Vol. II, p. 526. On cross-examination, Attorney Anthony Greco, counsel for Appellant, presented Appellee with copies of end-of-quarter earnings statements. The earnings statements reflect two distinct categories under the heading "Gross Pay," to wit: "Regular" and "Bonus." Appellee responded the bonus was not a bonus, but rather an RVU payment. Appellee added the RVU payments are part of her base pay.

**{¶13}** Michele Burgin, Vice President of Physician Services with Avita Health, detailed Avita Health's compensation structure. Burgin stated a physician is offered a contract with two options, either a base compensation or RVUs. RVUs are based upon productivity. Burgin noted a physician cannot make less than his/her base compensation,

which is paid 26 times per year. Burgin explained the base compensation is subtracted from the earned RVUs when determining the quarterly payments.

{¶14} On cross-examination, Burgin emphasized Appellee does not receive a bonus and the use of the term "bonus" in the employment contract was "arbitrary." Tr., Vol. V, p. 1380. Burgin noted the compensation Appellee receives is all earned income.

{¶15} Upon conclusion of the testimony, the trial court provided the parties with an opportunity to submit written closing arguments by October 25, 2024.  Via Judgment Entry filed April 30, 2025, the trial court denied Appellant's motions for contempt. The trial court found Appellee did not violate the spousal support provision of the Settlement Agreement.  The trial court explained the compensation Appellee received for work which was based upon RVUs was not a bonus.

{¶16} It is from this judgment entry Appellant appeals, raising as the following assignment of error:


I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS MISINTERPRETATION OF THE MARITAL SETTLEMENT AGREEMENT SETTING FORTH THE PARTIES' RIGHTS AND OBLIGATIONS REGARDING SPOUSAL SUPPORT.


I


*Choice of Law*

{¶17} "A choice-of-law clause is '[a] contractual provision by which the parties designate the jurisdiction whose law will govern any disputes that may arise between the

parties.'" *Desantis v. Lara*, 2009-Ohio-2570, ¶ 19 (1st Dist.), citing Black's Law Dictionary (8 Ed.Rev.2004) 258. "[C]hoice of law provisions apply to determine the application of state substantive law; therefore, while a forum may apply the substantive law of another state, the forum's own procedural law will govern the case." *White v. Crown Equip. Corp.*, 2005-Ohio-1785, ¶ 13 (3d Dist.).

**{¶18}** The Settlement Agreement includes a choice of law provision, which reads:

> g. This Agreement is entered into in the State of California. It shall be construed and interpreted under and in accordance with the laws of the State of California applicable to agreements made and to be wholly performed in the State of California.
>
> Marital Settlement Agreement, Section XXXII, p. 35.

**{¶19}** Appellee submits the Settlement Agreement "was not to be 'wholly performed in the State of California' and the parties, counsel and courts were aware of this fact." Brief of Appellee at p. 8. Appellee notes she executed her first employment contract with Avita in Ohio in 2021, before the termination of the parties' marriage in 2022, adding the Settlement Agreement expressly contemplated relocation to Ohio and "the parties were aware that at least portions of terms contained in their Separation Agreement would be performed in the State of Ohio." *Id*. at p. 9. Appellee concludes, "If the parties intended for California law to continue to apply after relocation to Ohio, as expressly contemplated in the Separation Agreement, they could have included such terms" therein. *Id*.

{¶20} Appellee executed her first employment contract with Avita in July, 2021, and moved to Ohio shortly thereafter.  Appellant subsequently moved to Ohio. Appellant and Appellee executed the Settlement Agreement on January 7, and January 28, 2022, respectively.  The California Court entered a Judgment of Dissolution of Marriage which incorporated the Settlement Agreement on February 8, 2022.  Despite having already relocated to Ohio, the parties chose to include the choice of law provision in the Settlement Agreement. We find these facts establish the parties intended to have California substantive law apply to any future disputes. The parties' intent is "presumed to reside in the language they chose to employ in the agreement." *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997).

{¶21}  By focusing on the phrase "to be wholly performed in the State of California," Appellee is attempting to negate the parties' intent. The complete sentence reads: "It shall be construed and interpreted under and in accordance with the laws of the State of California applicable to agreements made and to be wholly performed in the State of California."  The "to be wholly performed" refers to which California laws will be used to construe and interpret the Settlement Agreement. In other words, the Settlement Agreement is to be construed and interpreted under the same California laws which would apply to agreements made in California and agreements which are to be wholly performed in California.

{¶22}  The Settlement Agreement clearly states: "This Agreement is entered into in the State of California." Marital Settlement Agreement at p. 1.  Given the plain language of the Settlement Agreement, we find any substantive disputes should be resolved

applying California law. Moreover, it is well settled in Ohio, "in cases involving a contract, the law of the state where the contract is made governs interpretation of the contract." *Nationwide v. Ferrin*, 21 Ohio St. 3d 43, 44 (1986).

**{¶23}** In addition, by virtue of the Full Faith and Credit Clause, the trial court was required to give full faith and credit to the February 8, 2022 Judgment of Dissolution of Marriage issued by the California Court. See *Wyatt v. Wyatt*, 65 Ohio St.3d 268, 269 (1992). Article IV, Section 1 of the United States Constitution provides: "Full Faith and Credit shall be given in each state to the * * * judicial proceedings of every other state." "In applying full faith and credit to the judgments of a sister state, Ohio courts give these judgments the same effect as they would have in the courts of the state where the adjudication was had." (Citations omitted.) *Muter v. Muter*, 2008-Ohio-6794, ¶ 8 (9th Dist.).

*Standard of Review*

**{¶24}** Under California law, "[w]hen the trial court's construction of a written agreement is challenged on appeal . . . and no extrinsic evidence is necessary to resolve any ambiguity or uncertainty, interpretation of the contract is subject to de novo review." *In re Marriage of Lafkas*, 237 Cal.App.4th 921, 932 (2015). Similarly, in Ohio, the interpretation of a written contract is a question of law; therefore, an appellate court reviews de novo a trial court's interpretation of the parties' separation agreement as incorporated into the divorce decree. *Freeman v. Freeman*, 2016-Ohio-7565, ¶ 10 (4th Dist.).

**{¶25}** Because the trial court's finding Appellee was not in contempt was based upon its interpretation of the Settlement Agreement, our review is de novo.

*Analysis*

**{¶26}** "The standard analysis used to review a trial court's interpretation of a written contract * * * begins with the threshold question of whether the writing is ambiguous—that is, reasonably susceptible to more than one interpretation." (Citation omitted.) *Adams v. MHC Colony Park, L.P.*, 224 Cal.App.4th 601, 619 (2014). "The analysis of whether an ambiguity exists is not limited to the words of the contract." (Citation omitted.) *Id*. "Trial courts are required to receive provisionally any proffered parol [sic] evidence that is relevant to show whether the contractual language is reasonably susceptible to a particular meaning." (Citations omitted.) *Id*. "Such parol [sic] evidence might expose a latent ambiguity when the contract appears unambiguous on its face." (Citation omitted.) *Id*.

**{¶27}** "Similarly, an appellate court must consider the proffered parol [sic] evidence when conducting its independent review into whether an ambiguity exists." (Citation omitted.) *Id*. "In other words, appellate courts evaluate the instrument's language and relevant extrinsic evidence and decide whether, in light of the extrinsic evidence, the language is reasonably susceptible to the competing interpretations urged by the parties." (Citation omitted.) *Id*.

**{¶28}** "[W]hen different constructions of a provision are otherwise equally proper, that is to be taken which is most favorable to the party in whose favor the provision was made." *Sutherland v. Barclays American/Mortgage Corp.*, 53 Cal.App.4th 299, 310 (1997), citing Cal. Code Civ. Proc., § 1864.

**{¶29}** Appellee executed her employment contract with Avita on July 19, 2021. With respect to compensation, the employment contract provides:

1) <u>Compensation</u>. Physician will be paid *the greater* of the following:

a. Physician shall receive $291,000.00 per year as base compensation ("Base Compensation") for the three (3) years of this agreement, which shall be paid out under the same payroll schedule as all other Hospital employees.

b. The total number of work Relative Value Units ("RVU's"), multiplied by 58.35 (the "Work RVU Ratio"). Estimated bonus payments based on the above work RVU calculation may be paid out quarterly, with a final settlement at the end of each contract year. * * *

(Italicized emphasis in original.) July 16, 2021 Employment Agreement at p. 13.

**{¶30}** The parties executed the Settlement Agreement some six months later in January, 2022, and included the same bonus language found in the employment contract:

a. Wife shall pay Husband spousal support of $4,500 per month commencing August 1, 2021. Further, as additional spousal support Wife shall pay Husband 18.5% of any bonus she receives from her employment within 14 days of receipt of the bonus, including any bonus she may receive from her employment in San Diego County. She shall provide Husband with a copy of her bonus pay stub along with the payment.

Marital Settlement Agreement, Section IV. Spousal Support, p. 16.

{¶31} As set forth in our Statement of the Facts and Case, supra, Appellee testified her biweekly paycheck comes from her RVUs and her quarterly RVU payments are smaller because of the biweekly payments. On cross-examination, Appellee was presented with copies of end-of-quarter earnings statements, which reflected two distinct categories under the heading "Gross Pay," to wit: "Regular" and "Bonus." Appellee responded the bonus was not a bonus, but rather an RVU payment. Appellee reiterated the RVU payments are part of her base pay.

{¶32} Vice President of Physician Services with Avita Health Michele Burgin detailed Avita Health's compensation structure, explaining a physician has two compensation options, either a base compensation or RVUs. Burgin indicated a physician cannot make less than his/her base compensation, which is paid 26 times per year. Burgin added the base compensation is subtracted from the earned RVUs when determining the quarterly payments. On cross-examination, Burgin stressed Appellee did not receive bonuses and the use of the word "bonus" in the employment contract was "arbitrary" and the compensation Appellee receives is all earned income.

{¶33} Evaluating the language of the employment contract and relevant extrinsic evidence by way of the testimony of Appellee and Michele Burgin, we find the employment contract is unambiguous and not reasonably susceptible to the interpretation advanced by Appellee. When the parties entered into the Settlement Agreement, they were well aware of the manner in which Appellee was to be compensated. Had the parties not intended for Appellee's RVU bonus payments to be included in the spousal support award, the parties could have chosen language which reflected such. We find Appellee's interpretation of the Settlement Agreement would render the bonus language superfluous.

"An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable." *Carson v. Mercury Ins. Co.*, 210 Cal.App.4th 409, 420 (2012).

**{¶34}** We find Appellee's belief as to the meaning of the term "bonus payments" in the employment contract is not relevant. In addition, we find Burgin's testimony the use of the word "bonus" was "arbitrary" is disingenuous. The language change in Appellee's renewal contract, which was executed on July 2, 2024, from "Estimated bonus payments based on the above work RVU calculation may be paid out quarterly, with a final settlement at the end of each contract year" to "Estimated productivity payments based on the above work RVU calculation may be paid out quarterly, with a final settlement at the end of each contract year," appears to be a confession of sorts.

**{¶35}** Furthermore, we disagree with Burgin's characterization of Appellee's employment contract as providing Appellee with "two options." Sections "a." and "b." of the Compensation provision in Appellee's employment contract are not options, but rather alternatives with payment under section "a." being a guaranteed minimum salary payment, and additional payments under section "b." as bonuses for monies generated by Appellee over and above the guaranteed minimum salary under section "a."

**{¶36}** Based upon the foregoing, Appellant's sole assignment of error is sustained. We vacate the trial court's finding Appellee was not in contempt for failing to pay her spousal support obligation, which the trial court premised upon an improper legal determination Appellee did not violate the Settlement Agreement, and remand the matter

for the trial court to determine whether Appellee was in willful contempt for said violation.

We also remand the matter to the trial court to calculate the amount of spousal support Appellee owes to Appellant.  The trial court is instructed to calculate the spousal support obligation pursuant to this Court's interpretation of the Settlement Agreement and Appellee's employment contract. Costs are assessed to Appellee.


By: Hoffman, J.

King, P.J. and

Popham, J. concur