[Cite as *Cincinnati Ins. Co. v. Truck Sales Leasing, Ltd.*, 2026-Ohio-2402.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
TUSCARAWAS COUNTY, OHIO

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY,<br><br>    Plaintiff/Counterclaim Defendant-Appellant<br><br>-vs-<br><br>TRUCK SALES LEASING, LTD., TRUCK SALES LEASING, INC.,GARY CORPMAN, WESTFIELD INSURANCE COMPANY aka AMERICAN SELECT INSURANCE COMPANY, and RODNEY RAFAEL,<br><br>    Defendants/Counterclaim Plaintiffs-Appellees | Case No. 2025 AP 08 0031<br><br><u>Opinion And Judgment Entry</u><br><br>Appeal from the Tuscarawas County Court of Common Pleas, Case No. 2024 CT 03 0242<br><br>Judgment:  Affirmed<br><br>Date of Judgment Entry: June 23, 2026 |

**BEFORE:** Craig R. Baldwin; Kevin W. Popham; David M. Gormley, Judges

**APPEARANCES:** RICHARD C.O. REZIE, DENNIS G. REHOR, JUSTIN A. DUBLIKAR, MICHAEL E. JACOBS, for Plaintiff/Counterclaim Defendant-Appellant; CARI FUSCO EVANS, for Defendants/Counterclaim Plaintiffs-Appellees.

*Baldwin, P.J.*

{¶1} Appellant The Cincinnati Insurance Company ("CIC") appeals the decision of the trial court denying its motion for summary judgment and granting the appellees' motion for summary judgment. Appellees are Truck Sales Leasing Ltd./Truck Sales Leasing, Inc. ("Truck Sales"), Gary Corpman ("Corpman"), Westfield Insurance Company aka American Select Insurance Company ("Westfield/American Select"), and Rodney Rafael. For the reasons that follow, we affirm the trial court's decision.

**STATEMENT OF FACTS AND THE CASE**

{¶2} On April 30, 2019, Winesburg Chair Co., Ltd. ("Winesburg") entered into a Vehicle Lease and Service Agreement ("Lease") with appellee Truck Sales, whom the Lease identified as "Lessor." At all times relevant hereto Winesburg, whom the Lease identified as "Customer," was insured by the appellant, and appellee Truck Sales was insured by appellee Westfield/American Select. The Lease provided that appellee Truck Sales would lease to Winesburg a tractor rig identified in Schedule A of the Lease. Schedule A identified the subject vehicle as a 2020 International LT TAS, Serial Number 3HSDZAPR9LN160754. The Lease provided, inter alia, that appellee Truck Sales would provide parts and supplies, and scheduled mechanical preventative maintenance and repairs; and, that Winesburg would deliver the vehicle to a designated facility for repairs and scheduled maintenance. Schedule A listed the term of the Lease to be 66 months.

{¶3} In addition, the Lease provided in pertinent part:

9.    **INSURANCE**

**A.    Liability Insurance and Responsibility for Loss.** The party designated on Schedule A shall provide and maintain at all times during the term of this Agreement, at its expense, auto liability insurance covering the Vehicles, with limits not less than those specified on Schedule A. Said coverage ("Liability Insurance") shall include as insureds, Customer, Lessor, Owner, IDEALEASE, INC. and such other parties as determined by Lessor. Customer is responsible for all losses, claims, demands and liability that are not covered by such insurance or are in excess of the limits specified on

Schedule A and that relate to the ownership, maintenance, condition, use or operation of Vehicles.

**(1)** **Provided by Customer.** If Customer is designated to provide Liability Insurance, said insurance shall provide primary coverage with an Insurance carrier satisfactory to Lessor, and shall provide a waiver of subrogation by the insurance carrier in favor of Lessor, IDEALEASE, INC. and Owner.

Further, the Lease contained the following indemnification provision:

**10.** **INDEMNIFICATION.** Customer agrees to defend, release, indemnify and hold Lessor, Owner, IDEALEASE, INC., and their insurers harmless from and against any loss or liability arising from:

**(A)** Any claim or cause of action for death or injury to persons (including Customer and its employees, drivers and other agents) and damages to or loss of property (including the Property as defined in section 9.E[1]), arising out of or caused by the ownership, maintenance, use or operation of any Vehicle covered by this Agreement during its term or thereafter.

\* \* \*

**(E)** All costs of defense and expenses of every kind, including reasonable attorney's fees, incurred in connection with any suits or claims for which Customer grants an indemnity in this Section 10 or in any other provision of this Agreement.

---

[1] Section 9(E) of the Lease addresses damage to goods, cargo, and other property, and is therefore not applicable herein.

(Boldface original.)

Winesburg, the "Customer", is the party designated on Schedule A as responsible for providing and maintaining "at all times during the term of this Agreement, at its expense, auto liability insurance covering the Vehicles."

{¶4} Winesburg is insured by appellant CIC under a commercial policy which provides, inter alia, business auto coverage. Appellant CIC's policy contains an Automobile Schedule that lists, as a covered vehicle, the 2020 International tractor-trailer, Serial Number 3HSDZAPR9LN160754. "Who is an Insured" is defined by the policy at Section II – Liability Coverage, which was amended by the CinciPlus Business Auto XC+ (Expanded Coverage Plus) Endorsement to include additional insureds by contract. The pertinent policy language states:

> C. **Additional Insured by Contract**
>
> **SECTION II – LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured** is amended to include as an insured any person or organization for whom you have agreed in a valid written contract to provide insurance as afforded by this policy.
>
> This provision is limited to the scope of the valid written contract.

(Boldface original.) Appellant CIC issued Winesburg an insurance card that set forth its coverage of the 2020 International tractor-trailer with serial number 3HSDZAPR9LN160754.

In addition, the CinciPlus Business Auto XC+ (Expanded Coverage Plus) Endorsement also provides:

A.   **Blanket Waiver of Subrogation**

**SECTION IV – BUSINESS AUTO CONDITIONS, A. Loss Conditions, 5. Transfer of Rights of Recovery Against Others to Us** is amended by the addition of the following:

We waive any right of recovery we may have against any person or organization because of payments we make for "bodily injury" or "property damage" arising out of the operation of a covered "auto" when you have assumed liability for such "bodily injury" or "property damage" under an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution or [sic] the "insured contract."

B.   **Noncontributory Insurance**

**SECTION IV – BUSINESS AUTO CONDITIONS, B. General Conditions, 5. Other Insurance c**. is deleted in its entirety and is replaced by the following:

c.   Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary and we will not seek contribution from any other insurance for any liability assumed under an "insured contract" that requires liability to be assumed on a primary noncontributory basis.

(Boldface original.)

**{¶5}** On March 19, 2022, appellee Corpman, an undisputed employee of appellee Truck Sales, was returning the leased tractor to Winesburg as a courtesy following routine maintenance. Appellee Corpman stopped at a stop sign, then proceeded to turn left, not

seeing Robert Miller riding his bicycle towards the intersection. An accident resulted, causing significant injuries to Miller. The appellant, who insured Winesburg, ultimately settled the claim with Miller for $4,578,135.56, and thereafter demanded contribution from the appellees.

{¶6} The appellees argued that Winesburg's insurer - appellant CIC - was solely responsible for providing coverage for the accident and refused to contribute. The appellant filed a declaratory judgment action on March 15, 2024, seeking a declaration regarding the existence and priority of insurance coverage for the March 19, 2022, accident. The parties engaged in discovery, and filed various motions, including dispositive motions.

{¶7} On August 1, 2025, the trial court issued a Judgment Entry setting forth a detailed analysis of the coverage issues presented, the applicable Lease, and the appellant's policy of insurance. The court found that the appellant was not entitled to summary judgment; and, found that the appellees were entitled to summary judgment.

{¶8} The appellant filed a timely appeal, and sets forth the following two assignments of error:

{¶9} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING CORPMAN TO BE AN INSURED OF CINCINNATI, THUS, CINCINNATI WAS SUBROGATED TO THE RIGHT OF THE INJURED PARTY AGAINST CORPMAN AS THE TORTFEASOR AND, BY EXTENSION, CORPMAN'S INSURER, WESTFIELD."

{¶10} "II. THE TRIAL COURT ERRED IN ENTERING SUMMARY JUDGMENT/ DECLARATORY JUDGMENT IN FAVOR OF DEFENDANTS RATHER THAN CINCINNATI ON EACH OF ITS CLAIMS OR, AT MINIMUM, FINDING NO GENUINE ISSUES OF MATERIAL FACT TO EXIST."

## STANDARD OF REVIEW

{¶11} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). Accordingly, this Court reviews a trial court's award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶12} Civ.R. 56(C) states in pertinent part: "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ... A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Thus, summary judgment may be granted only after the trial court determines that: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and, 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶13} As this Court recently stated in *Infield v. Westfield Ins. Co.*, 2023-Ohio-1199 (5th Dist.):

It is well established that the party seeking summary judgment bears the burden of demonstrating no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt*, 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 309 N.E.2d 924 (1974).

*Id*. at ¶ 21.

**ANALYSIS**

{¶14} The appellant's assignments of error are interrelated, and as such we choose to address them together.

{¶15} This case involves the interpretation of two contracts: first, the Lease between Winesburg and appellee Truck Sales; and second, appellant CIC's policy of insurance. This Court recently discussed appellate review of a trial court's interpretation of a contract in *Crum-Cianflone v. Cianflone,* 2026-Ohio-663 (5th Dist.):

> "The standard analysis used to review a trial court's interpretation of a written contract * * * begins with the threshold question of whether the writing is ambiguous—that is, reasonably susceptible to more than one interpretation." (Citation omitted.) Adams v. MHC Colony Park, L.P., 224 Cal.App.4th 601, 619, 169 Cal. Rptr. 3d 146 (2014)....

*Id.* at ¶ 26. As set forth by the Ohio Supreme Court in the seminal case of *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241 (1978), "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Id.* at paragraph 2 of the syllabus, 245-246. The *Alexander* Court stated further that "... where the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Id.* at 246.

{¶16} It is undisputed that appellee Corpman was at all times relevant hereto an employee of appellee Truck Sales, and that he was acting within the scope and course of his employment with appellee Truck Sales at the time of the accident. As such, appellee Corpman's actions rendered appellee Truck Sales vicariously liable for Corpman's

operation of the subject vehicle. The clear and unambiguous language contained in the Lease between the appellant's insured (Winesburg) and appellee Truck Sales states that Winesburg shall provide and maintain auto liability insurance covering the subject vehicle, and shall include Truck Sales as an additional insured under the terms of appellant CIC's policy. Winesburg did so through its insurance carrier, appellant CIC. Appellant CIC's policy specifically names not only the subject vehicle as a "covered auto" under the terms of the policy, but also specifically names appellee Truck Sales as an additional insured under the terms of the policy.

{¶17} In addition, the terms of the Lease clearly and unambiguously state that appellant CIC's insured "agrees to defend, release, indemnify and hold" appellee Truck Sales "harmless from and against any loss or liability arising from any claim or cause of action for death or injury to persons ... arising out of or caused by the ownership, maintenance, use or operation of any Vehicle covered by" the Lease. Further, appellant CIC's policy contains a blanket waiver of subrogation which states "[w]e waive any right of recovery we may have against any person or organization because of payments we make for 'bodily injury' or 'property damage' arising out of the operation of a covered 'auto' when you have assumed liability for such 'bodily injury' or 'property damage' under an 'insured contract', provided the 'bodily injury' or 'property damage' occurred subsequent to the execution of the 'insured contract'." The Lease was signed on April 30, 2019, and the accident occurred on March 19, 2022, clearly within the 66 month term of the Lease. Furthermore, the blanket waiver of subrogation language waives any right of recovery as against "any person or organization" arising out of payments made by appellant CIC for bodily injury arising out the the operation of the covered auto.

**{¶18}** The vehicle leased to the appellant's insured by appellee Truck Sales was specifically named as a covered vehicle in the appellant's policy, and appellee Truck Sales was named as an additional insured under the terms of the policy. The Lease specifically indemnifies and holds appellee Truck Sales harmless. Further, the appellant's policy contains a blanket waiver of subrogation, waiving any right of recovery against persons or organizations for payments made for bodily injury arising out of the operation of a covered 'auto' when liability for such 'bodily injury' or 'property damage' has been assumed under an 'insured contract'. The trial court correctly found that no genuine issues of material fact exist regarding the insurance coverage issues presented herein, and correctly granted summary judgment in favor of the appellees. The appellant's assignments of error are, therefore, without merit.

## CONCLUSION

**{¶19}** Based upon the foregoing, the appellant's assignments of error numbers one and two are overruled, and the decision of the Tuscarawas County Court of Common Pleas is hereby affirmed.

**{¶20}** Costs to appellant.

By: Baldwin, P.J.

Popham, J. and

Gormley, J. concur.